UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RECENT PAST PRESERVATION NETWORK, a Virginia non-profit corporation, P.O. Box 100505, Arlington, VA 22210; DION NEUTRA, 2440 Neutra Place, Los Angeles, CA 90039; and CHRISTINE MADRID FRENCH, 2422 Willard Drive, Charlottesville, VA 22903,<br><br>               Plaintiffs,<br><br>    v.<br><br>JOHN LATSCHAR, in his official capacity as SUPERINTENDENT OF GETTYSBURG NATIONAL MILITARY PARK, 97 Taneytown Rd., Gettysburg, PA 17325 DENNIS REIDENBACH, in his official capacity as ACTING DIRECTOR, NORTHEAST REGION OF THE NATIONAL PARK SERVICE, 200 Chestnut Street, Philadelphia, PA 19106; MARY BOMAR,[1/] in her official capacity as DIRECTOR OF THE NATIONAL PARK SERVICE, 1849 C Street, N.W., Washington, DC 20240; DIRK KEMPTHORNE, in his official capacity as SECRETARY OF THE UNITED STATES DEPARTMENT OF THE INTERIOR, 1849 C Street, N.W., Washington, D.C. 20240; THE NATIONAL PARK SERVICE, 1849 C Street, N.W., Washington, D.C. 20240; and THE UNITED STATES DEPARTMENT OF THE INTERIOR, 1849 C Street, N.W., Washington, D.C. 20240,<br><br>               Defendants. | Case Number: 1:06-CV-02077-TFH<br>Judge:  Thomas F. Hogan<br>Deck Type:  Administrative Agency Review |

**FEDERAL DEFENDANTS' MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION TO AUGMENT
THE RECORD, OR IN THE ALTERNATIVE, FOR JUDICIAL NOTICE**

---

[1/] Federal Defendants note that the correct name of the Director of the National Park Service is Mary Bomar, not Marie Bomar. Dennis Reidenbach is now the director of the Northeast Region.

## **TABLE OF CONTENTS**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     A.     The Shoaff, McIlnay and Matyiko Affidavits Should Be Disregarded . . . . . . . . 7

     B.     The Adams Declaration Should Be Disregarded . . . . . . . . . . . . . . . . . . . . . . . . 9

     C.     The French Declaration Should Be Disregarded . . . . . . . . . . . . . . . . . . . . . . . 11

     D.     The Neutra Declaration Should Be Disregarded . . . . . . . . . . . . . . . . . . . . . . . 13

     E.     The Yost Declaration Should Be Disregarded . . . . . . . . . . . . . . . . . . . . . . . . . 14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## <u>TABLE OF AUTHORITIES</u>

**FEDERAL CASES**

<u>Amfac Resorts, L.L.C. v. U. S. Dep't of Interior</u>,
    143 F. Supp.2d 7 (D.D.C. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

<u>Ammex, Inc. v. United States</u>,
    62 F. Supp.2d 1148 (CIT 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

<u>AT&T Information Systems v. General Services Admin.</u>,
    810 F. 2d 1233 (D.C. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,8

<u>Bar MK Ranches v. Yuetter</u>,
    994 F.2d 735 (10th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

<u>Biodiversity Legal Foundation v. Norton</u>,
    180 F. Supp. 2d 7 (D.D.C. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

<u>Camp v. Pitts</u>,
    411 U.S. 138 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5, 6

<u>Citizens To Preserve Overton Park v. Volpe</u>,
    401 U.S. 402 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4

<u>Commercial Drapery Contractors v. United States</u>,
    133 F.3d 1 (D.C. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

<u>Cross Timbers Concerned Citizens v. Saginaw</u>,
    991 F. Supp. 563 (N.D. Tex. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

<u>Doraiswamy v. Sec. of Labor</u>,
    555 F.2d 832 (D.C. Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

<u>Edison Elec. Inst. v. Occupational Safety & Health Admin.</u>,
    849 F.2d 611 (D.C. Cir. 1988 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7

<u>Environmental Defense Fund v. Costle</u>,
    657 F.3d 275 (D.C. Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

<u>Florida Power & Light Co. v. Lorion</u>,
    470 U.S. 729 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

<u>Fund for Animals v. Williams</u>,
    245 F. Supp. 2d 49 (D.D.C. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

<u>Fund for Animals v. Williams</u>,
    391 F. Supp. 2d 191(D.D.C. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Gersman v. Group Health Ass'n, Inc.,
    975 F.2d 886 (D.C. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Jackson Hole Conservation Alliance v. Babbitt,
    96 F. Supp. 2d 1288 (D. Wyo. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Marsh v. Oregon Natural Resources Council,
    490 U.S. 360 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

National Wildlife Fed'n, v E.P.A.,
 286 F.3d 554 (D.C. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Pacific Shores Subd. v. U.S. Army Corps of Engineers,
    448 F. Supp. 2d 1 (D.D.C. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 13

Preserve Endangered Areas of Cobb's History v. U.S. Army Corps of Engineers,
    87 F.3d 1242 (11th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Sierra Club v. U.S. Department of Energy,
    26 F. Supp. 2d 1268 (D. Colo. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council,
    435 U.S. 519 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Walter O. Boswell Memorial Hosp. v. Heckler,
    749 F.2d 788 (D.C. Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6, 8

## FEDERAL STATUTES

5 U.S.C. § 701 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
5 U.S.C. § 706 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim
16 U.S.C. § 470 et. seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
28 U.S. C. § 2401(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
42 U.S.C. §§ 4321-4370f . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**INTRODUCTION**

This case concerns a challenge to the National Park Service's ("Park Service" or "NPS") decision to adopt a general management plan ("GMP") that was intended to restore historic battle lines at Gettysburg National Military Park.  Plaintiffs assert that the Park Service failed to provide an analysis of the impacts of that demolition.  However, as explained in Federal Defendants' Memorandum in Support of Their Cross-Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment ("Defendants SJ Memo"), consideration of that allegation is barred by the statute of limitations in 28 U.S.C. § 2401(a), which sets out a very generous six-year statute of limitations for civil actions against the government, including for claims brought pursuant to the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-4370f, and the National Historic Preservation Act ("NHPA"),16 U.S.C. §§ 470 et seq.  Plaintiffs commenced their lawsuit in December 2006, more than seven years after the NEPA and NHPA reviews were completed and the Park Service had complied with Section 110 of the NHPA.   Plaintiffs cannot avoid the statute of limitations bar by asserting their claims concern a failure to act.  The Park Service adopted an alternative for the GMP that included demolition of the Cyclorama Building in November 1999 when it approved the Record of Decision ("ROD"), which constituted a final agency action subject review under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, et seq.  Any alleged failure by the Park Service to comply with NEPA and the NHPA prior to taking that action could have been adjudicated at that time under the Section 706(2) of the APA, which provides a review of an agency action under the arbitrary and capricious standard.

The question is when Plaintiffs first had a right to resort to the Court to complain that the Park Service failed to comply with NEPA and the NHPA before making a final decision.  Here, the public was fully on notice that the Park Service contemplated demolition of the Cyclorama Building in conjunction with its plans for Gettysburg National Military Park under the GMP, and it is clear from the administrative record that Plaintiffs themselves appreciated this fact.  The public was also

1

fully on notice that in adopting the ROD in November 1999, the Park Service had selected an alternative that included demolition of the Cyclorama Building.

In Plaintiffs' Motion to Augment the Record, or in the Alternative, for Judicial Notice ("Pl. Mot.") (Doc. 28), Plaintiffs request this Court to order Federal Defendants to supplement the administrative record with three broad types of documents: (1) document post-dating the adoption of the ROD, including expert affidavits improperly attempting to challenge the basis for the agency's decision, affidavits attempting to assert standing, which Federal Defendants have not moved to dismiss on that ground or made it an issue, and affidavits from Plaintiffs' counsel; (2) documents already included in the administrative record; and (3) documents that were not before the Park Service, but which Plaintiffs nonetheless believe should be part of the record.

Plaintiffs have failed to carry their burden of showing that their proffered exhibits were in fact considered by the agency in the course of the decision-making process, or in the alternative, that they are essential for effective judicial review and consistent with one of the narrowly tailored exceptions to the rule that agency actions must be reviewed "on the record." Accordingly, Plaintiffs' motion must be denied.

## **ARGUMENT**

It is well-settled Supreme Court precedent that "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." Camp v. Pitts, 411 U.S. 138, 142 (1973); see also Florida Power & Light Co. v. Lorion, 470 U.S. 729, 743-44 (1985). This Court has followed this principle, explaining the judicial review is to be based on the administrative record "'that was before the Secretary at the time he made his decision.'" Walter O. Boswell Memorial Hosp. v. Heckler, 749 F.2d 788, 792 (D.C. Cir. 1984), quoting Citizens To Preserve Overton Park v. Volpe, 401 U.S. 402, 420 (1971) (emphasis in original); see also Environmental Defense Fund v. Costle, 657 F.3d 275, 284 (D.C. Cir. 1981). "The task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706(2),

to the agency decision based on the record the agency presents to the reviewing court." Florida
Power & Light Co., 470 U.S. at 743-44.

Consequently, evidence challenging the merits and propriety of the agency's decision may
not be considered by the reviewing court unless it is part of the administrative record. Edison Elec.
Inst. v. Occupational Safety & Health Admin., 849 F.2d 611, 617-18 (D.C. Cir. 1988).  In accordance
with this widely accepted principle of administrative law, parties are not permitted to introduce extra-
record materials to the reviewing court when challenging an agency's decision. Id.; see also AT&T
Information Systems v. General Services Admin., 810 F. 2d 1233, 1236 (D.C. Cir. 1987) ("we have
repeatedly applied [the rule against supplementing the agency record] to bar introduction of
litigation affidavits to supplement the administrative record") (citations omitted).  If the agency's
decision cannot be sustained based on the administrative record presented to the reviewing court,
the appropriate remedy is not de novo review or the introduction of extra-record documents, but
remand to the agency for further consideration. Vermont Yankee Nuclear Power Corp. v. Natural
Resources Defense Council, 435 U.S. 519, 549 (1978).

As one D.C. District Court has succinctly stated, there is a difference between a request to
supplement or augment the record and a request that the court review extra-record evidence.
Supplementing the record means "adding to the volume of the administrative record with documents
the agency considered," whereas requesting review of extra-record evidence means asking the
court to "view[] evidence outside of or in addition to the administrative record that was not
necessarily considered by the agency." See Pacific Shores Subd. v. U.S. Army Corps of Engineers,
448 F. Supp. 2d 1, 5 (D.D.C. 2006).

If the court is presented with a request to augment or supplement the record, the court must
accord a presumption of regularity to an agency's certification of the completeness of an
administrative record. See Fund for Animals v. Williams, 245 F. Supp. 2d 49, 56-57 (D.D.C. 2003);
Bar MK Ranches v. Yuetter, 994 F.2d 735, 740 (10th Cir. 1993).  Thus, a plaintiff challenging the

3

completeness of the administrative record "must make a significant showing – variously described as a 'strong', 'substantial', or 'prima facie' showing – that it will find material in the agency's possession indicative of . . . an incomplete record." <u>Amfac Resorts, L.L.C. v. U. S. Dep't of Interior</u>, 143 F. Supp.2d 7, 12 (D.D.C. 2001).  Put another way, "a party must do more than simply allege that the record is incomplete.  Rather, a party must provide the [c]ourt with reasonable, non-speculative grounds to believe that materials <u>considered</u> in the decision-making process are not included in the record." <u>Ammex, Inc. v. United States</u>, 62 F. Supp.2d 1148, 1156 (CIT 1999) (emphasis added); <u>Pacific Shores Subd.</u>, 448 F. Supp. 2d at 5 ("[f]or a court to supplement the record, the moving party must rebut a presumption of administrative regularity and show that the documents to be included were before the agency decision-maker").  Further, it is not enough "to state that the documents were before the entire [agency], but rather it must instead prove that the documents were before the [agency] decisionmaker(s)." <u>Pacific Shores Subd.</u>, 448 F. Supp. 2d at 5-6 (emphasis added), citing <u>Overton Park</u>, 401 U.S. at 420.

In contrast, a party moving for consideration of extra-record materials must show that those materials are essential for effective judicial review and that one of the recognized exceptions to the record-review doctrine applies.  <u>Pacific Shores Subd.</u>, 448 F. Supp. 2d at 5, citing <u>Fund for Animals v. Williams</u>, 391 F. Supp. 191, 197-98 (D.D.C. 2005).  While the D.C. Circuit has recognized certain narrowly tailored exceptions to the general prohibition against extra-record review, they are just that – exceptions.  See <u>Commercial Drapery Contractors v. United States</u>, 133 F.3d 1, 7 (D.C. Cir. 1998).  As such, they are to be narrowly construed and it is Plaintiffs' burden to establish that there are exceptional circumstances present that would permit the use of extra-record evidence. <u>Id</u>.

Plaintiffs' motion is styled as one for augmentation of the record, or in the alternative, for judicial notice.  However, in arguing that the Court should consider the multiple affidavits and attachments proffered, Plaintiffs state that the documents should be considered under certain of

the exceptions to judicial review on the administrative record, and thus their motion should properly be treated as one for consideration of extra-record materials. Because Plaintiffs have failed to carry their burden of showing that these documents are essential for effective judicial review and are consistent with one of the exceptions to the rule that the agency action must be reviewed "on the record," their motion should be denied. Further, even if this Court were to treat part or all of their motion as a motion to supplement the record, Plaintiffs have failed to rebut the presumption that the administrative record has been properly certified.

Plaintiffs incorrectly assert in their motion that their claims concern agency inaction, see Pl. Mot. at 2-3, brought pursuant to Section 706(1) of the APA. However, as explained in the Federal Defendants SJ Memo, the Park Service adopted an alternative that included demolition of the Cyclorama Building in November 1999, and at that point there was a federal agency action subject to review. Thus, the standard of review applied in this case is found in Section 706(2) of the APA, whether the agency action was arbitrary or capricious. Further, courts have held that the requirement that judicial review be based "on the whole record" applies regardless of whether a plaintiff brings his claim pursuant to Section 706(1) or 706(2) of the APA. See, e.g., Camp, 411 U.S. at 143 (where there is a contemporaneous explanation of the issues claimed to be omitted, the court must restrict its review to the administrative record); Biodiversity Legal Foundation v. Norton, 180 F. Supp. 2d 7, 10 (D.D.C. 2001) (noting that requirement of review on the administrative record applies whether a court is reviewing agency action or inaction); Cross Timbers Concerned Citizens v. Saginaw, 991 F. Supp. 563, 570 (N.D. Tex. 1997) (holding that under either Section 706(1) or 706(2) "judicial review must be based on the administrative record already in existence") (internal citation omitted); Sierra Club v. U.S. Department of Energy, 26 F. Supp. 2d 1268, 1271 (D. Colo. 1998) ("[t]he judicial review provisions of the APA do not distinguish between a claim that an agency unlawfully failed to act and a claim based on action taken [and] [i]n both cases, the court's review of the defendant agencies' actions is generally confined to the

5

administrative record."). Thus, the case law affirms the proposition that a court's review of challenges to agency action, or agency inaction, is to be limited to the administrative record.

Plaintiffs seek to submit extra-record information to address issues they claim the Park Service failed to consider, namely the environmental impacts of demolition of the Cyclorama Building and alternatives to demolition. Plaintiffs also assert that the Park Service failed to comply with Section 110 of the NHPA. However, most of the documents proffered post-date the agency's decision in this case and, on that basis alone, should not be included in the administrative record. See Walter O. Boswell Memorial Hosp., 749 F.2d at 792; Preserve Endangered Areas of Cobb's History v. U.S. Army Corps of Engineers, 87 F.3d 1242, 1246, n.2 (11th Cir. 1996) (the administrative record should "only [contain] documents considered by the staff prior to the agency action") (emphasis added). Furthermore, the voluminous administrative record before the Court amply demonstrates that this issue was examined and that the requirements of NEPA and the NHPA were complied with. Therefore, the administrative record provides all the information the agency relied on in reaching its decision to select an alternative that included demolition of the Cyclorama Building and the Court's review should be limited to the record that was before the decision-maker at the time of the challenged action. See Walter O. Boswell Memorial Hosp., 749 F.2d at 792; Camp, 411 U.S. at 143 (where there is a contemporaneous explanation of the issues claimed to be omitted, the court must restrict its review to the administrative record). Since Plaintiffs have not and cannot establish that consideration of extra-record evidence in this record review case is appropriate, their motion should be denied.

Further, if the Court concluded that the record was deficient, the appropriate remedy would not be to seek extra-record evidence from the Plaintiffs and engage in a de novo evidentiary hearing, but rather to seek additional information from the agency or remand the matter back to the agency for further consideration. See Camp v. Pitts, 411 U.S. at 143 (if the record is inadequate, the appropriate remedy is for the court to remand to the agency for additional consideration or

"obtain from the agency" any additional explanation of the reasons for the challenged decision)(emphasis added).   Here, there is no need for either remedy because the extensive administrative record documents that the Park Service's decision to adopt an alternative that included demolition of the Cyclorama Building was carefully and thoroughly considered and further that the Park Service complied with the requirements of Section 110(a) prior to making that decision.   Under these circumstances, judicial review of the challenged decision should be limited to the administrative record and Plaintiffs' motion to supplement should be denied.

## A.   The Shoaff, McIlnay and Matyiko Affidavits Should Be Disregarded

Plaintiffs attempt to introduce the declarations of David McIlnay (Doc. 28-14) and Robert Shoaff (Doc. 28-16) for the purposes of asserting that the Cyclorama Building could be re-used either inside or outside of the park and for the proposition that the Cyclorama Building could be moved to at least one unnamed site outside of the park.   Plaintiffs also attempt to introduce the declaration of Jerry Matyiko (Doc. 28-13) to argue that the Cyclorama Building could be moved to at least one unnamed location outside the park.   All three of these declarations should be disregarded as impermissible attempts to engage in a "battle of the experts."   Evidence challenging the merits and propriety of the agency's decision may not be considered by the reviewing court unless it is part of the administrative record.   Edison Elec. Inst., 849 F.2d at 617-18.   "To permit an administrative determination 'to be attacked or supported by new evidence,' the Supreme Court has admonished, 'would substitute the court [for] the administrative tribunal...." Doraiswamy v. Sec. of Labor, 555 F.2d 832, 840 (D.C. Cir. 1976); see Camp, 411 U.S. at 142.   Federal agencies must have the discretion to rely on the informed opinion of their experts, and reviewing courts defer to the agency's discretion on such matters.   Marsh v. Oregon Natural Resources Council, 490 U.S. 360, 378 (1978) ("an agency must have discretion to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive").

Plaintiffs had the opportunity to submit these comments during the NEPA and NHPA

processes, the latter of which specifically addressed the question of use and adaptive reuse of the Cyclorama Building. See AR 001606-07; 001526-27. While plaintiff Dion Neutra submitted multiple comments during the Section 106 process, he did not attempt to submit any such declarations at that point. See AR 001630-32, 001574-75, 001515, 000105-107. Plaintiff Christine Madrid French provided comments during one of the public hearings on the GMP/EIS, AR 001808-1810, but similarly did not attempt to introduce such affidavits. Therefore, Plaintiffs should not be permitted to raise this issue now through these declarations. See National Wildlife Fed'n, v E.P.A., 286 F.3d 554,562 (D.C. Cir. 2002) ("[i]t is well established that issues not raised in comments before the agency are waived and this Court will not consider them").

Courts in this Circuit have routinely rejected similar attempts to convert an APA record review case into an evidentiary hearing with the submission of extra-record evidence, litigation affidavits and witness testimony. See, e.g., AT&T Information Systems, 810 F. 2d at1236 ("we have repeatedly applied [the rule against supplementing the agency record] to bar the introduction of litigation affidavits to supplement the administrative record") (citations omitted); Walter O. Boswell Mem'l Hosp, 749 F. 2d at 793 (noting that the court struck portions of an amicus brief that discussed affidavits not available to the agency at the time of its decision). As the D.C. Circuit in Walter O. Boswell Mem'l Hosp., found, the parties may not contest the merits of an agency's action by referring or submitting to the district court "any material that does not appear in the . . . administrative record." Id. at 794. The same conclusion and result should be reached here and this Court should properly disregard these declarations and deny Plaintiffs' request to augment the record with them or review them as extra-record evidence. Further, this Court should disregard any arguments made in reliance on those declarations.

8

**B.    The Adams Declaration Should Be Disregarded**

Plaintiffs seek to submit the declaration of Matthew G. Adams (Doc. 28-2) and documents attached thereto (Docs. 28-3 through 28-6) to show that Mr. Adams made several requests for information about plans for the Cyclorama Building, "as well as the agency's post-GMP compliance with NEPA and NHPA." Pl. Mot. at 4. This declaration, as well as all of the attachments, post-date the Park Service's adoption of the ROD.   Therefore they clearly were not before the agency decision-maker at the time of the final agency action, and thus do not belong in the administrative record.   Plaintiffs' brief statement that they wished to present information regarding "post-GMP compliance with NEPA and NHPA," without any further explanation is not enough to satisfy their burden and Plaintiffs fail to offer any additional explanation for each of the individual documents falls within any of the narrowly tailored exceptions allowing for consideration of extra-record evidence or why they are essential for judicial review.   In fact, Plaintiffs fail to even provide a list of the documents attached to this declaration in their motion.   Further, these documents do not undermine the Park Service's decision in 1999 to adopt an alternative that included demolition of the Cyclorama Building.   Therefore, these documents should be disregarded by this Court.

Additionally, a review of the documents show that none of them fall into any of the recognized exceptions.  For example, Exhibits C-D are nearly identical Freedom of Information Act requests from Plaintiffs' attorney, dated October 16, 2006, and Exhibits E-F are the Park Service's responses. Plaintiffs attempt to use Exhibits C, D and E to argue that the Park Service's response to the Freedom of Information Act request proves that the Park Service violated Section 110(a)(2) of the NHPA.  Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment ("Pl. Mem.") (Doc. 28) at 44-45.   However, as explained in the Declaration of John Latschar, Superintendent of Gettysburg National Military Park, attached hereto as Exhibit A, the Park Service stated that it did not have documents responsive to a request regarding a preservation program specifically for the Cyclorama Building.  See Exhibit A at ¶ 6 (emphasis added).  Section

9

110(a)(2) addresses agency responsibilities, and not individual parks. *Id.* Therefore, Mr. Adams was informed that the Park Service did not have any records responsive to such a request. Thus, this Court should not consider Exhibits C-F as extra-record evidence.

Exhibit G is yet another Freedom of Information Act request for the Environmental Assessment for the National Tower, which the Park Service provided, attached as Exhibits H and I. As explained in the Federal Defendants SJ Memo, the Environmental Assessment for the National Tower was prepared subsequently to the ROD because the National Tower had not yet been acquired by the Park Service at the time of the environmental review, as noted in the GMP/EIS. AR 000223, 000231. In fact, as the National Tower EA stated on the first page, it was not until December 9, 1999, that the United States even instituted condemnation proceedings to acquire the National Tower. See Adams Declaration, Exhibit H. A declaration of takings was not filed until May 17, 2000. See Exhibit 4 to Federal Defendants SJ Memo. More importantly, neither none of the environmental reviews undertaken by the Park service provided any analysis for the demolition of the National Tower, whereas they did for the demolition of the Cyclorama Building. Thus, this Court should not consider Exhibits G-I as extra-record evidence.

Exhibit K and L contain excerpts of the National Park Service's Director's Order 2 and Director's Order 12. First, as explained in the Federal Defendant SJ Memo, Director's Order 12 was not in effect at the time of the GMP/EIS and ROD. See http://www.nps.gov/policy/DOrders/DOrder12.html (setting the effective date of Director's Order 12 as January 8, 2001, and stating that it superseded and replaced NPS-12). Plaintiffs' reliance on Director's Order 12 is in error, as it was not in effect, and further gave no indication that it was intended to have retroactive effect. See Gersman v. Group Health Ass'n, Inc., 975 F.2d 886, 897-898, (D.C. Cir. 1992) ("generally congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result...retrospective laws are...generally unjust; and...neither accord with sound legislation nor with the fundamental

principles of the social compact") (internal citations and quotation marks omitted).  Additionally, the GMP/EIS specifically states that its analysis was conducted in accordance with NPS-12, not Director's Order 12.  AR 000358.  More importantly, when a plaintiff seeks consideration of guidelines as sources or law as opposed to fact, a court may determine whether the guidelines constitute authority–or in the alternative, non-binding general statements of policy – notwithstanding the exclusion of the guidelines or policy statements from the administrative record.  See Jackson Hole Conservation Alliance v. Babbitt, 96 F. Supp. 2d 1288, 1296 (D. Wyo. 2000).

Exhibits A-B are letters from Plaintiffs' attorneys to Superintendent John Latschar, dated October 21, 2005, and December 5, 2005.  These documents all post-date adoption of the ROD by several years.  Exhibits J and N contain dictionary definitions.  Exhibit M is an excerpt from the Gettysburg National Military Park website regarding the Cyclorama Building, dated January 15, 2008.  Plaintiffs fail to provide any explanation as to how any of these documents fall within any of the narrow exceptions to the general prohibition against extra-record review, and thus they should be disregarded by this Court.

Thus, Court should properly disregard these declarations and its attachments and deny Plaintiffs' request to augment the record with them or review them as extra-record evidence.  Further, this Court should disregard any arguments made in reliance on those documents.

**C.    The French Declaration Should Be Disregarded**

Plaintiffs state they wish the Court to augment the record with a letter from plaintiff Christine Madrid French to John Latschar (Doc. 28-8), along with approximately 25 documents (Docs. 28-3 through 28-11) they claim are necessary for effective judicial review of Federal Defendants failure to take action required under NEPA and NHPA.  Pl. Mot. at 3-4.  Once again, Plaintiffs fail to explain how each individual document will provide for effective judicial review, or even provide in their motion a list of the documents attached to this letter.  Further, none of these documents undermine the Park Service's decision in 1999 to adopt an alternative that included demolition of the

Cyclorama Building.

Attachments E-G, J, L are documents which are already contained in the administrative record. Attachment E is at AR 001545-1547. Attachment F is at AR 001566-1567. Attachment G is at AR 001559-65. Attachment J is at AR 001572-73. Attachment L is at AR 001555. Thus, there is no need for the Court to take any action with regard to these attachments.

Exhibit A is an October 21, 2005 letter from Plaintiffs' counsel to John Latschar, which is identical to Exhibit A to the Adams declaration. Attachments H, I, M, N are also letters that post-date the ROD, and therefore should be disregarded on that ground. Further, to the extent that Plaintiffs submit these letters to show that there was opposition to the proposed demolition of the Cyclorama Building, the record is replete with comment letters expressing such opposition. See, e.g., AR 001030; 001161; 001321-1323; 001577-78; 001579-80; 001581-82; 001583-84; 001615-16; 001619-20; 001621-23; 001630-33; 001640-44.

Attachment A is a magazine article from Summer, 2005, by plaintiff Christine Madrid French regarding the Cyclorama Building. Attachment Q is consists of a collection of 2005 and 2006 press releases by the World Monuments Fund about the Cyclorama Building. These documents all post-date the ROD, and as Plaintiffs provided no explanation for why these particular articles would provide for effective judicial review. Attachment D is a 1964 Washington Post article about the Cyclorama Building. Attachment B is a cover of Time magazine featuring Richard Neutra, dated August 15, 1949. See French declaration, Ex. B. No article is attached. There is no indication that this newspaper article or magazine cover was before the agency decision-maker. Further, Plaintiffs have failed to explain how this newspaper article or magazine cover would provide for effective judicial review.

Attachments U-Y are undated photographs of the Cyclorama Building. There is no way for Federal Defendants to know whether these photographs pre- or post-date the ROD, but in any case, Plaintiffs have failed to explain how these photographs would provide for effective judicial

12

review.

Attachments C, O, P, R, S and T are all letters that pre-date the ROD.  However, Plaintiffs have failed to show that any of these letters were before the agency decision-maker. While Plaintiffs may attempt to assert that the documents were before the Park Service, that is not enough.  See Pacific Shores Subd., 448 F. Supp. 2d at 6.  Rather, Plaintiffs "must instead prove that the documents were before the [agency] decisionmaker(s)." Id. (emphasis added).  Plaintiffs have not attempted to do so.  Nor have Plaintiffs carried their burden of showing that the record was not properly designated.  Further, to the extent that Plaintiff submit these letters to show that there was opposition to the proposed demolition of the Cyclorama Building, the record is replete with comment letters expressing such opposition. See, e.g., AR 001030; 001161; 001321-1323; 001577-78; 001579-80; 001581-82; 001583-84; 001615-16; 001619-20; 001621-23; 001630-33; 001640-44.

To the extent that the declaration itself attempts to detail events that happened long after adoption of the ROD, it should be disregarded.  Further, to the extent that the declaration is proffered to support Plaintiffs' claim of standing for their summary judgment motion, it should be disregarded, as Federal Defendants have not moved to dismiss on that ground or made it an issue in their cross-motion for summary judgment.  Thus, this Court should properly disregard the French declaration itself, and all attachments thereto, with the exception of the documents already contained in the administrative record and deny Plaintiffs' request to augment the record with them or review them as extra-record evidence.  Further, this Court should disregard any arguments made in reliance on this declaration or its  non-record attachments.

## D.    The Neutra Declaration Should Be Disregarded

Plaintiffs fail to discuss or even reference the declaration of Dion Neutra (Doc. 28-15) in their motion or in the proposed order accompanying the motion.  Thus, this Court should disregard the declaration in its entirety, as Plaintiffs have failed to offer any explanation for how the declaration prepared for this litigation provides for effective judicial review or falls into any of the narrowly

tailored exceptions.  Further, this declaration appears to be offered by Plaintiffs for the purposes of establishing standing for summary judgment motion, and Federal Defendants have not moved to dismiss on that ground or made it an issue in their cross-motion for summary judgment.  Thus, this declaration should be disregarded by this Court.

**E.    Yost Declaration Should Be Disregarded**

Plaintiffs also fail to discuss or even reference the declaration of Nicholas C. Yost (Doc. 28-17) in their motion or in the proposed order accompanying the motion.  Thus, this Court should disregard the declaration in its entirety, as Plaintiffs have failed to offer any explanation for how the declaration prepared for this litigation provides for effective judicial review or falls into any of the narrowly tailored exceptions.  Further, this declaration appears to be offered for the purposes of detailing events that post-dated the ROD by years.  The declaration also states that there are unnamed locations to where the Cyclorama Building could be moved, and to the extent that Plaintiffs offer this declaration to show that there are alternatives to the demolition of the Cyclorama Building, it should be disregarded, as Plaintiffs had multiple opportunities during the NEPA and NHPA reviews to offer such comments.  Plaintiffs cannot now attempted to raise such issues through a litigation declaration from their counsel.  Thus, this declaration should be disregarded by this Court.

## CONCLUSION

For the reasons stated above, this Court should deny Plaintiffs' motion in its entirety and disregard all declarations and attachments thereto, as well as any arguments made in reliance thereon.

Dated:  March 14, 2008.

Respectfully submitted,

RONALD J. TENPAS
Assistant Attorney General

Environment & Natural Resources Division

/s/ *Samantha Klein*
SAMANTHA KLEIN
United States Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C.  20044-0663
Phone: (202) 305-0474
Fax:    (202) 305-0506
E-mail: samantha.klein@usdoj.gov

Of Counsel:

MARTHA F. ANSTY
Attorney
Office of the Solicitor, N.E. Region
U.S. Department of the Interior
Winston Prouty Federal Building
11 Lincoln Street
Essex Junction, VT 05452
Telephone:  (802) 872-0629
Fax:  (802) 872-9704

Counsel for Federal Defendants

Exhibit A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RECENT PAST PRESERVATION )
NETWORK, a Virginia non-profit corporation, )
P.O. Box 100505, Arlington, VA 22210; )
DION NEUTRA, 2440 Neutra Place, Los Angeles, )
CA 90039; and CHRISTINE MADRID FRENCH, )
2422 Willard Drive, Charlottesville, VA 22903, )
)
               Plaintiffs, )
)
      v. )
)
JOHN LATSCHAR, in his official capacity as Deck ) Case Number: 1:06-CV-02077-TFH
Type: Administrative Agency SUPERINTENDENT ) Judge: Thomas F. Hogan
OF GETTYSBURG Review NATIONAL ) Deck Type: Administrative Agency
MILITARY PARK, 97 Taneytown Rd., Gettysburg, )              Review
PA 17325 DENNIS REIDENBACH, in his official )
capacity as ACTING DIRECTOR, NORTHEAST )
REGION OF THE NATIONAL PARK SERVICE, )
200 Chestnut Street, Philadelphia, PA 19106; )
MARY BOMAR,[1/] in her official capacity as )
DIRECTOR OF THE NATIONAL PARK )
SERVICE, 1849 C Street, N.W., Washington, DC )
20240; DIRK KEMPTHORNE, in his official )
capacity as SECRETARY OF THE UNITED )
STATES DEPARTMENT OF THE INTERIOR, )
1849 C Street, N.W., Washington, D.C. 20240; )
THE NATIONAL PARK SERVICE, 1849 C Street, )
N.W., Washington, D.C. 20240; and THE UNITED )
STATES DEPARTMENT OF THE INTERIOR, )
1849 C Street, N.W., Washington, D.C. 20240, )
)
)
           Defendants. )
)
)

---

[1/] Federal Defendants note that the correct name of the Director of the National Park Service is Mary Bomar, not Marie Bomar. Dennis Reidenbach is now the director of the Northeast Region.

## DECLARATION OF JOHN A. LATSCHAR

I, John A. Latschar, declare the following:

1. I am employed by the National Park Service, United States Department of the Interior, in Gettysburg, Pennsylvania. I am currently the Superintendent of Gettysburg National Military Park (GNMP or GETT), the Eisenhower National Historic Site (ENHS or EISE), and the Soldiers' National Cemetery. As Superintendent, I am the senior federal official responsible for the management and operation of these three National Park Service sites. I have held this position since August 21, 1994.

2. One of my duties and responsibilities as Superintendent is the management of the Freedom of Information Act (FOIA) responses that pertain to GNMP and/or ENHS. Thus, among other management functions, I supervise the public affairs specialist at GNMP, who functions as our FOIA specialist, communicate with the FOIA specialist at the Northeast Regional Office of the NPS, and with the Regional Solicitor of the Department of the Interior.

3. On October 16, 2006, the Northeast Regional Office of the National Park Service received a Freedom of Information Act Request from Matthew G. Adams, of the law firm Sonnenshein, Nath & Rosenthal. The FOIA requested that the NPS provide the following documents:

> (1) The preservation program for the protection of historic properties, as required by and defined in 16 U.S.C. 470h-2(a)(2), *that applies to the Cyclorama Center at Gettysburg National Military Park in Gettysburg, Pennsylvania.* (Emphasis added)

> (2) To the extent not covered by the foregoing request, all documents, records, and other materials related to the preparation of the preservation program for the protection of historic properties, as required by and defined in 16 U.S.C. 470h-2(a)(2), *that applies to the Cyclorama Center at Gettysburg national Military Park in Gettysburg, Pennsylvania.* (Emphasis added)

4. On or about October 16, 2006, the Northeast Regional Office forwarded the FOIA request to Gettysburg NMP. The Park FOIA specialist conferred with myself, and with Anthony Conte, U.S. Department of the Interior, Regional Solicitor.

5. On November 8, 2006, the Regional Director of the Northeast Region wrote to Mr. Matthew G. Adams, informing him that there "are no records responsive to your request." Mr. Adams was made aware of his right to appeal this response to the Agency Freedom of Information Act Appeals Officer. To our knowledge, Mr. Adams has not taken the opportunity to appeal.

6. Mr. Adams specifically asked for "The preservation program for the protection of historic properties, as required by and defined in 16 U.S.C. 470h-2(a)(2), *that applies to the Cyclorama Center at Gettysburg national Military Park in Gettysburg, Pennsylvania.*" (Emphasis added) However, 16 U.S.C. 470h-2(a)(2) specifically addresses Agency responsibilities (not individual parks), and specifically requires that each "Federal Agency shall establish...a preservation program for the identification, evaluation, and nomination to the National Register of Historic Places, and protection of historic properties." There is no requirement in 16 U.S.C. 470h-2(a)(2) for either the Agency (NPS) or the Park (GNMP) to establish a preservation program for individual historic properties, such as the Cyclorama Center.

Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 10th day of March, 2008, in Gettysburg, Pennsylvania

SWORN AND SUBSCRIBED BEFORE ME
THIS *10* DAY OF *march* 20*07*
*Sherry L Kidd*

JOHN LATSCHAR, Superintendent
Gettysburg National Military Park
National Park Service
United States Department of the Interior

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Sherry L. Kidd, Notary Public
Gettysburg Boro, Adams County
My Commission Expires June 19, 2008
Member, Pennsylvania Association of Notaries

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RECENT PAST PRESERVATION NETWORK, a Virginia non-profit corporation, P.O. Box 100505, Arlington, VA 22210; DION NEUTRA, 2440 Neutra Place, Los Angeles, CA 90039; and CHRISTINE MADRID FRENCH, 2422 Willard Drive, Charlottesville, VA 22903,<br><br>        Plaintiffs,<br><br>   v.<br><br>JOHN LATSCHAR, in his official capacity as Deck Type:  Administrative Agency SUPERINTENDENT OF GETTYSBURG Review NATIONAL MILITARY PARK, 97 Taneytown Rd., Gettysburg, PA 17325 DENNIS REIDENBACH, in his official capacity as ACTING DIRECTOR, NORTHEAST REGION OF THE NATIONAL PARK SERVICE, 200 Chestnut Street, Philadelphia, PA 19106; MARY BOMAR,[1/] in her official capacity as DIRECTOR OF THE NATIONAL PARK SERVICE, 1849 C Street, N.W., Washington, DC 20240; DIRK KEMPTHORNE, in his official capacity as SECRETARY OF THE UNITED STATES DEPARTMENT OF THE INTERIOR, 1849 C Street, N.W., Washington, D.C. 20240; THE NATIONAL PARK SERVICE, 1849 C Street, N.W., Washington, D.C.  20240; and THE UNITED STATES DEPARTMENT OF THE INTERIOR, 1849 C Street, N.W., Washington, D.C. 20240,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>Case Number: 1:06-CV-02077-TFH<br>Judge:  Thomas F. Hogan<br>Deck Type:  Administrative Agency Review |

[PROPOSED] ORDER

On this day, the Court considered the Plaintiffs' Motion to Augment the Record, or in the

Alternative, for Judicial Notice (Doc. 28), and, having reviewed the motion and all other matters

---

[1/] Federal Defendants note that the correct name of the Director of the National Park Service is Mary Bomar, not Marie Bomar. Dennis Reidenbach is now the director of the Northeast Region.

relevant to said motion, the Court is of the opinion that the Motion is not warranted and is

hereby DENIED.

IT IS SO ORDERED.


SIGNED, this _____ day of _____, 2008.



_____
UNITED STATES DISTRICT COURT JUDGE