## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RECENT PAST PRESERVATION NETWORK, a Virginia non-profit corporation, P.O. Box 100505, Arlington, VA 22210; DION NEUTRA, 2440 Neutra Place, Los Angeles, CA 90039; and CHRISTINE MADRID FRENCH, 2522 Willard Drive, Charlottesville, VA 22903, )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| Plaintiffs,   )<br>) | |
| v.   )<br>) | |
| JOHN LATSCHAR in his official capacity as SUPERINTENDENT OF GETTYSBURG NATIONAL MILITARY PARK, 97 Taneytown Rd., Gettysburg, PA 17325; DENNIS REIDENBACH in his official capacity as ACTING DIRECTOR, NORTHEAST REGION OF THE NATIONAL PARK SERVICE, 200 Chestnut Street, Philadelphia, PA 19106; MARY BOMAR in her official capacity as DIRECTOR OF THE NATIONAL PARK SERVICE, 1849 C Street, N.W., Washington, D.C. 20240; DIRK KEMPTHORNE in his official capacity as SECRETARY OF THE UNITED STATES DEPARTMENT OF THE INTERIOR, 1849 C Street, N.W., Washington, D.C. 20240; THE NATIONAL PARK SERVICE, 1849 C Street, N.W., Washington, D.C. 20240; and THE UNITED STATES DEPARTMENT OF THE INTERIOR, 1849 C Street, N.W., Washington, D.C. 20240, )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case Number:  1:06-CV-02077-TFH<br>Judge:  Thomas F. Hogan<br>Deck Type:  Administrative Agency<br>            Review<br>Date Filed:  12/05/2006<br><br>MOTION FOR JUDICIAL NOTICE |
| Defendants.   )<br>)<br>) | |

- i -

Plaintiffs Recent Past Preservation Network, Christine Madrid French, and Dion Neutra ("Plaintiffs") hereby request that the Court take judicial notice of the United States Court of Appeals for the Ninth Circuit's amended opinion in *Center for Biological Diversity v. Rey*, No. 07-16892 (9th Cir. May 15, 2008) (the "*Rey* Opinion"). This case was decided (May 15, 2008) a month after Plaintiffs' last brief on the merits was filed (April 11, 2008). Being unsure as to the appropriate means of inviting the Court's attention to this case, but not wanting to delay until oral argument, we respectfully submit this Motion for Judicial Notice.

We invite the Court's attention to the *Rey* Opinion for a single purpose. The *Rey* court was asked to determine whether the United States Forest Service complied with the National Environmental Policy Act ("NEPA") prior to approving certain logging contracts. According to the Forest Service, the contracts were necessary in order to fund the agency's fuel reduction treatment program. The court disagreed, noting that the Forest Service's NEPA analysis never considered any alternative budgetary solutions to the agency's apparent inability to fund its fuel reduction program:

> [A]re there no alternative ways of getting money to do the [fuel] clearing that is imperative? Obviously, there may be. First of all, there is the [Forest Service's] own budget. Does that budget contain any funds that could be devoted to fuel removal? Is every one of its activities so necessary and so tightly allocated that no money could be shifted? We do not know the answer because this alternative has not been explored. *Id*. at 5777.

*Rey* concluded that an agency cannot simply claim that a particular course of action is necessary due to budgetary constraints without actually examining such constraints and alternative methods of funding in its NEPA document. *Id*. at 5777-78. We respectfully request that the court judicially notice the *Rey* Opinion for this proposition as applied to the future of the Cyclorama Building.

The Federal Rules of Evidence permit this Court to take notice of facts "not subject to reasonable dispute" in that they are either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201. Plaintiffs respectfully request that the Court take judicial notice of the *Rey* Opinion, which is a public document and capable of accurate and ready determination.

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion for Judicial Notice of the *Rey* Opinion.

Respectfully submitted this 25th day of July, 2008.

                                                                     /S/
Nicholas C. Yost (USDC-DC Bar No. 968289)[1]
Matthew G. Adams (CA Bar No. 229021)
SONNENSCHEIN NATH & ROSENTHAL LLP
Attorneys for Plaintiffs
525 Market Street
26th Floor
San Francisco, CA 94105-2708
Telephone: (415) 882-5000
Facsimile: (415) 882-0300

Attachment

---

[1] Mr. Yost is admitted to practice before this court (USDC-DC Bar No. 968289). Mr. Yost is admitted to the District of Columbia Bar, but his membership is inactive. Mr. Yost is an active member of the California Bar and practices under that membership (Bar No. 35297).

# ATTACHMENT

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

CENTER FOR BIOLOGICAL DIVERSITY;
NATURAL RESOURCES DEFENSE
COUNCIL, INC.; SIERRA CLUB; THE
WILDERNESS SOCIETY,
    *Plaintiffs-Appellants,*

SIERRA FOREST LEGACY,
    *Intervenor-Appellant,*

    v.

MARK REY, in his official capacity
as Under Secretary of Agriculture;
ABIGAIL KIMBELL, in her official
capacity as Chief of the United
States Forest Service; BERNARD
WEINGARDT, in his official capacity
as Regional Forester, United States
Forest Service Region 5; ALICE
CARLTON, in her official capacity
as Forest Supervisor, Plumas
National Forest,
    *Defendants-Appellees,*

TUOLUMNE COUNTY ALLIANCE FOR
RESOURCES & ENVIRONMENT;
CALIFORNIA FOREST COUNTIES
SCHOOLS COALITION; REGIONAL
COUNCIL OF RURAL COUNTIES;
WESTERN COUNCIL OF INDUSTRIAL
WORKERS; KLAMATH ALLIANCE FOR
RESOURCES &

No. 07-16892

D.C. No.
CV-05-00205-MCE

ORDER AND
AMENDED
OPINION

5768         SIERRA FOREST LEGACY v. REY

ENVIRONMENT; COARSE GOLD
RESOURCE CONSERVATION DISTRICT/
EASTERN MADERA COUNTY FIRE
SAFE COUNCIL; TULARE COUNTY
RESOURCE CONSERVATION DISTRICT;
SIERRA RESOURCE CONSERVATION
DISTRICT; STRAWBERRY PROPERTY
OWNERS' ASSOCIATION; HUNTINGTON
LAKE ASSOCIATION; HUNTINGTON
LAKE BIG CREEK HISTORICAL
CONSERVANCY; CALIFORNIA
EQUESTRIAN TRAILS & LANDS
COALITION; CALIFORNIA FORESTRY
ASSOCIATION; CALIFORNIA LICENSED
FORESTERS ASSOCIATION;
CALIFORNIA/NEVADA SNOWMOBILE
ASSOCIATION; AMERICAN FOREST &
PAPER ASSOCIATION; AMERICAN
FOREST RESOURCE COUNCIL;
BLUERIBBON COALITION; CALIFORNIA
SKI INDUSTRY ASSOCIATION;
CALIFORNIA CATTLEMEN'S
ASSOCIATION; QUINCY LIBRARY
GROUP; PLUMAS COUNTY,
           *Defendant-intervenors-
                      Appellees.*

Appeal from the United States District Court
for the Eastern District of California
Morrison C. England, District Judge, Presiding

Argued and Submitted
March 10, 2008—San Francisco, California

Filed May 14, 2008
Amended May 15, 2008

Sierra Forest Legacy v. Rey            5769

Before: Stephen Reinhardt, John T. Noonan,
Raymond C. Fisher, Circuit Judges

Opinion by Judge Noonan;
Concurrence by Judge Noonan

## COUNSEL

David Edelson, Berkeley, California, for the plaintiffs-appellants.

Jennifer Scheller, Washington, D.C., for the defendants-appellees.

## ORDER

The opinion filed on May 14, 2008 is amended as follows:

Replace the final paragraph with "For the reasons stated, we REVERSE the district court's denial of a preliminary injunction and REMAND with instructions to grant immediately a preliminary injunction on the three proposed projects to the extent that they are inconsistent with the 2001 FEIS."

## OPINION

NOONAN, Circuit Judge:

Sierra Forest Legacy (Sierra Forest) appeals the decision of the district court denying a preliminary injunction against the United States Forest Service (the USFS or the Forest Service) in a suit challenging its decision to permit logging in accordance with changes made in 2004 by the USFS in the relevant forest plan. Other parties, noted in the caption, have intervened on each side. The Attorney General of California, Edmund G. Brown, Jr., has filed an amicus brief in support of Sierra Forest.

We hold that the district court abused its discretion. We reverse and remand.

5772                SIERRA FOREST LEGACY v. REY

## PROCEEDINGS

Sierra Forest is comprised of the Sierra Nevada Forest Protection Campaign, Center for Biological Diversity, Natural Resources Defense Council, Sierra Club, and The Wilderness Society, many of whose members enjoy and are educated by the affected forests and the wildlife dependent on habitats within them. This suit was begun in 2005 in response to the Supplemental Environmental Impact Statement (SEIS) issued by the USFS in January of 2004 as a supplement to the Final Environmental Impact Statement (FEIS), issued by the USFS in 2001 in implementation of the Sierra Nevada Forest Plan Amendment.

Under the SEIS, the USFS approved logging in three specific sites: Basin, Empire, and Slapjack. On September 10, 2007, the USFS announced that it intended to advertise and award logging contracts for these sites. On September 21, 2007, Sierra Forest moved for a preliminary injunction. On October 15, 2007, the district court denied the motion.

Sierra Forest appeals, raising several claims under the National Forest Management Act (NFMA), 16 U.S.C. §§ 1600-1614, and the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321-4370f. In light of our disposition, we do not reach all of the arguments raised by Sierra Forest.

## ANALYSIS

*The Standard*

Our review is a review of a motion preliminary to a trial. As the district court's decision is preliminary, so must our decision be preliminary. It is not on the merits. We need not address all aspects of the projects. Our decision must defer to the discretion of the district judge who has had to act with some dispatch. *See Lands Council v. Martin*, 479 F.3d 636, 639 (9th Cir. 2007) (citation omitted). When a preliminary

injunction is sought, there is a sense of urgency on each side — to go ahead expeditiously with the project; to stop what is seen as harm that cannot be undone. Deferential as we are, we cannot default in reviewing de novo the law binding on the judge who has discretion but not carte blanche. *See Sports Form, Inc. v. United Press Int'l, Inc.*, 686 F.2d 750, 752 (9th Cir. 1982). We state only the facts relevant to the result.

A district court abuses its discretion if it bases its decision on an erroneous legal standard or clearly erroneous finding of fact. *See Earth Island Inst. v. U.S. Forest Serv.*, 351 F.3d 1291, 1298 (9th Cir. 2003) (citation omitted). The familiar criteria to be met to obtain the issuance of an injunction before the trial are a strong likelihood of success on the merits; the possibility of irreparable harm; a balance of hardships favoring the plaintiffs; and advancement of the public interest. *See id.* at 1297-98 (citation omitted).

*Probability of Success on the Merits*

There is no disagreement that USFS is authorized to take action to prevent the occurrence of forest fires. One necessary step is the clearing of brush, including the removal of small trees. Doing so involves the expenditure of funds. The USFS does not assert, however, that it is necessary as a preventive measure to cut down the larger trees that provide the habitat in which various species thrive. These trees constitute a desirable prize for loggers who seek to convert them into lumber for commercial purposes. The USFS acknowledges that its reason for selling the forest trees to commercial loggers is to raise funds to carry on its fire prevention duties. Sierra Forest and the State of California seek to preserve the larger trees and so to preserve the habitat that supports various species. We need decide here a limited and narrow issue: Does the 2004 SEIS prepared by USFS regarding its plans to sell off the forest trees comply with the requirements of NEPA?

[1] Sierra Forest argues that USFS violated NEPA's requirement to "[r]igorously explore and objectively evaluate

5774         SIERRA FOREST LEGACY v. REY

all reasonable alternatives" to a proposed plan that has significant environmental effects. 40 C.F.R. § 1502.14(a) (2000). USFS cannot rely on its discussion of alternatives in the 2001 FEIS to satisfy this requirement for the 2004 SEIS. "[W]here changed circumstances affect the factors relevant to the development and evaluation of alternatives," USFS "must account for such change in the alternatives it considers." *Natural Res. Def. Council v. U.S. Forest Serv.*, 421 F.3d 797, 813-14 (9th Cir. 2005) (citation omitted).

[2] Such changed circumstances plainly exist here. First, USFS altered its modeling techniques between the issuance of the 2001 FEIS and the 2004 SEIS and failed to update its analysis of the 2001 FEIS alternatives under these new techniques. Second, the 2004 SEIS introduced substantively new objectives from those contained within the 2001 FEIS. A primary purpose of the new framework adopted by the SEIS is the provision of funds for the reduction of fuel, that is, for the reduction of the risk of fire in the forests. This goal has become an imperative after the catastrophic fires that have devastated forests in the northwest. Severe wildfires have increased dramatically in the Sierra Nevada from an average of 43,000 acres per year ten years ago to an average of 63,000 acres per year. Control of wildfires is an imperative for the inhabitants of land bordering the forests. It is an imperative for defenders of the habitat and the wildlife within them. Fire is a force that must be managed if the environment is to be protected.

The SEIS proposes a simple solution:

> *Opportunities for Leveraging Appropriated Funds to Accomplish Fuels Treatments*
>
> Under Alternative S2, revenues from the sale of commercial forest products could be obtained from some fuels treatments. This would increase the likelihood of accomplishing the projected acres of treat-

ment, an essential first step in achieving the desired reductions in acres burned. Where consistent with desired conditions, area treatments would be designed to be economically efficient and meet multiple objectives.

Timber sale contracts provide a mechanism for the efficient removal of commercially-valuable sawtimber. Contracts that have sufficient value offer capabilities for funding the accomplishment of additional resource management goals. Records from recent timber offerings indicate that sales with higher volumes per acre attract higher bids. Sales yielding an average 4.5 mbf/acre provide approximately $112/mbf, compared to only $38/mbf for 1.5 mbf/acre (Lamdram, pers comm).

The size of tree made available for harvest has a significant influence on sale volume per acre averages and thus, per unit bid values. Assuming typical heights, the board foot volume for a 12-inch dbh tree is 39, compared to 317 for a 20 inch tree and 710 for a 24 inch tree. Using these assumptions, 77 twelve-inch dbh tress would be needed to reach the minimum economically feasible sale volume (estimated at 3 mbf/acre). This compares to 9 trees of 20-inch dbh and 4 trees of 24-inch dbh. In summary, including only a few medium-sized trees can make an impact on the economic viability of a given project.

A number of options are available for deriving commercially-valuable wood products from fuels treatments. Where wood-fired electrical generation facilities exist and sufficient sawtimber value is present, small trees, e.g. biomass, can be removed. Bids in excess of required collections may also be made available for fuel reduction treatments within the sale area boundary. These may include:

5776　　　　　　　Sierra Forest Legacy v. Rey

> 1) Shredding of ladder fuels, i.e. small trees, woody shrubs, and surface fuel,
>
> 2) Prescribed fire treatment following timber harvest, or
>
> 3) Fuel reduction treatment outside timber sale units (within the time sale area boundary).
>
> Alternatively, a stewardship contract package (a service contract, not a timber sale contract), that includes commercially-valuable sawtimber, may provide for cost-effective implementation of multiple fuels reduction projects within the contracted area.

In amplification, the USFS replied to the following public comment:

> *9.2.4. Public Concern: The Final SEIS should not claim that increased logging levels will increase forest protection, or it should scientifically justify that assertion.*
>
> Response: Alternative S2 in the SEIS was developed to provide opportunities for increasing available funds for fuels reduction work on the national forests. This alternative increases revenues by permitting the removal of some medium-sized trees from some areas. The SEIS does not suggest that removing these trees will alter stand structure in ways that significantly enhance fire protection. It is the increase in available funds from logging that can be used to increase fuels reduction work. But the work would be done on other lands. See the discussion on fuels treatment economics in the SEIS (Chapter 4, Economics of Fuels Treatments) for more informa-

tion about treatment costs and the value of additional timber harvest to fuels reduction work. The Final SEIS (Chapter 4, Fire and Fuels Management) has an expanded discussion regarding the economics of fuels treatments.

Sell trees to loggers. Use the money to clear areas of what is potential fuel for fire. The solution has a secondary benefit: what the loggers cut can, at least in part, be timber that was potential for fire. In one sale, a fire hazard can be removed and the USFS paid so that it can remove the fuel of future fires.

Two for one always has an attractive ring. But are there no alternative ways of getting money to do the clearing that is imperative? Obviously, there may be. First of all, there is the USFS's own budget. Does that budget contain any funds that could be devoted to fuel removal? Is every one of its activities so necessary and so tightly allocated that no money could be shifted? We do not know the answer because this alternative has not been explored.

Suppose that the USFS and its parent, the Department of Agriculture, cannot spare a dime. What then? Appropriate appropriations come from Congress. The work of fire prevention is work of the first importance. If the USFS does not have enough, why should not Congress be asked to give it more? Surely the avoidance of catastrophic fire in the national forests must rate a high priority among the needs of the nation.

[3] Alternatives considered in the 2001 FEIS address the critical problem of fuel reduction. Several of them (F3, F4, F6, and F7) are projected as achieving an acreage reduction of over 30% in the first five decades as opposed to a 22% reduction that is projected in the adopted Alternative S2. These alternatives do not appear to have been reexamined in the light of the new urgency of fire prevention.

5778            SIERRA FOREST LEGACY v. REY

**[4]** The Attorney General of California raised several alternative methods to fund USFS's fire reduction objectives, including requesting a special appropriation from Congress, re-prioritizing other funding, and altering its fuel treatment program. USFS failed to consider these alternatives in its implementation of the 2004 SEIS. So long as all these alternatives remain unexamined or unreexamined, so long does the SEIS fail to conform to the law. The district court abused its discretion in concluding that USFS complied with NEPA's requirement to "[r]igorously explore and objectively evaluate all reasonable alternatives." 40 C.F.R. § 1502.14(a) (2000).

*Balancing of Equities*

**[5]** The legal merits of the Sierra Forest's case, at this stage of the litigation, are strong. To justify a preliminary halt to the projects the real possibility of irreparable harm is still required. It is not necessary to canvass all the species that may be affected and all the environmental harm that might ensue. It suffices in this case to take account of the status of the spotted owl whose range relates to the affected forests. True, the species exists in southern California as well as in the northwest; but the species as a whole has been classified as "sensitive" by the Forest Service. The proposed logging will not destroy the species. What it will do is reduce its established habitat. The possibility that this reduction in its range will irreparably damage the sensitive species cannot be dismissed.

**[6]** Postponement of the Forest Service plans may increase the danger posed by fires; but the Forest Service and Congress do not appear helpless to find the funds to decrease the dangers. The question we address here is whether USFS's *choice of funding* for fire reduction — rather than fire reduction itself — outweighs California's preservation interests. We conclude that it does not, given that "special solicitude" should be afforded California's stake in its natural resources and that the Forest Service did not consider alternatives to its choice of

funding. *Massachusetts v. Envtl. Prot. Agency*, 127 S. Ct. 1438, 1454-55 (2007).

Public interests are further implicated: the importance of preserving the environment and of enforcing the law intended to preserve it. *See Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 545 (1987).

**[7]** For the reasons stated, we REVERSE the district court's denial of a preliminary injunction and REMAND with instructions to grant immediately a preliminary injunction on the three proposed projects to the extent that they are inconsistent with the 2001 FEIS.

---

NOONAN, Circuit Judge, concurring:

*Impaired Impartiality*. That judges cannot supplement their salaries, however inadequate they may be, by imposing fines provided by law on those convicted of lawbreaking seems to be a pretty elementary principle of justice. Yet the civilized state of Ohio and the Supreme Court of that state saw nothing to object to in the practice until the Supreme Court of the United States unanimously held it to be a deprivation of due process for a municipal officer to get $12 out of a $100 fine that he had legally imposed. *Tumey v. Ohio*, 273 U.S. 510 (1927).

Almost as elementary is the extension of this principle to administrative adjudicators. *See Gibson v. Berryhill*, 411 U.S. 564, 579 (1973) (citation omitted).

The bias created need not be personal, that is, the adjudicator to be found biased need not be paid off by his decision. The bias can arise from his decision being a way of raising money for the municipality he serves. *Ward v. Vill. of Monroeville*, 409 U.S. 57 (1972). Once again, the civilized state

of Ohio and its Supreme Court had to be corrected by the United States Supreme Court finding a denial of due process when fines imposed by the mayor were "a substantial portion" of the municipality's income, although the mayor's own salary was fixed and independent of the fines. *Id.* at 59. The test, failed by Ohio's statutory scheme, was whether "a possible temptation" was offered the mayor acting as judge "not to hold the balance nice, clear, and true." *Id.* at 60 (quoting *Tumey*, 273 U.S. at 532).

It would not seem to require a Euclid to draw appropriate inferences from the governing principle of impartiality. Yet it has not been easy. Two justices dissented in *Gibson*, asserting that only personal gain disqualified the decider. 411 U.S. at 84 (White, J. and Rehnquist, J., dissenting). Forty years after *Tumey,* three states still used the statutory scheme of a judge supporting himself by his own judgments that *was* condemned as unconstitutional in *Tumey*. *See* K. Davis, *Administrative Law Text* § 12.04 (1972). In many instances the necessity of having a judge has been allowed to trump the necessity of a judge who is impartial. *Id.* at § 12.05. A distinction has also been drawn between a judicial or quasi-judicial role and a legislative role where impartiality is not a requisite. *Id.* at § 12.04. A financial interest may also be so slight as to be discounted as a disqualifier. *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 245-46 (1980).

Custom or indifference cannot legalize a departure from what is required by the criterion of impartiality. Necessity may make an inroad, and it might be argued that the USFS is necessitous; it says it doesn't have the money it needs unless it sells the forests. That argument takes too narrow a view of the position of the USFS. It has a budget that may be malleable. It exists within a department that may have discretionary funds. It is the arm of a nation whose credit, not inexhaustible, is strong enough not to require supplementation by sales of the nation's timber. Necessity, in a word, has not been established.

We do not need, on the facts of this case, more information on the budget of the Forest Service. It has been suggested in earlier litigation concerning similar timber sales by the Forest Service that this information should be furnished. *See Earth Island Inst. v. U.S. Forest Serv.*, 442 F.3d 1147, 1178 (9th Cir. 2006) (Noonan, J., concurring); *Earth Island Inst. v. U.S. Forest Serv.*, 351 F.3d 1291, 1309 (9th Cir. 2003) (Noonan, J., concurring). In this case, the Forest Service makes no secret of the importance of the sales to its approval of the projects. Fund-raising for fuel-reduction is a substantial purpose.

The Forest Service has a final argument, unfurled as its lead argument in oral argument. It is that its approval of the three contested projects denies no person the right to life, liberty or property. Hence due process of law is not required and nothing but due process requires impartiality. This bold claim calls for careful consideration.

Undisputed is the standing of Sierra Forest to assert the interest of those individual members affected by the destruction of the environment and its species. "Aesthetic and environmental well-being, like economic well-being, are important ingredients of the quality of life in our society," important enough to confer standing under the Administrative Procedure Act, 5 U.S.C. § 702, to redress an injury in fact. *Sierra Club v. Morton*, 405 U.S. 727, 734 (1972). These are elements of the liberty enjoyed by a citizen. An injury in fact inflicted by a decision of the USFS must necessarily be the denial of a result to which the plaintiffs were legally entitled. If the plaintiffs were entitled to the result, were the plaintiffs not entitled to an unbiased decision-maker? The injury asserted here is alleged to arise under NEPA. Invoking the federal law, Sierra Forest was entitled to seek its application by an agency which was without an interest of its own in a result contrary to the law.

Why is there a case before us if no person's rights were at stake? We do not sit to adjudicate general policy disputes but

5782        Sierra Forest Legacy v. Rey

to decide controversies. A controversy calls for two parties, each asserting an interest and a right that protects that interest. So here, Sierra Forest is not a plaintiff without an interest and a right. We do not need to dismiss the case for want of a controversy. Nor do we need to find that no right is at issue. The right Sierra Forest seeks to vindicate here did not arise with the USFS's decision. The right was what Sierra Forest sought to vindicate before the USFS.

It is possible that a crucial distinction here may be made between rulemaking and adjudicating, if it is meaningful to separate administrative action into these two tight compartments. Rulemaking by an administrative agency, like legislation by a legislature, seems exempted from scrutiny for conflict of interest. When the Forest Service develops a forest plan it is engaged in rulemaking and it needs only to provide for the kind of notice and comment that rulemaking requires. *See* 36 CF.R. § 219.9. Forest plans "do not grant, withhold, or modify any contract, permit, or other legal instrument, subject anyone to civil or criminal liability, or create any legal rights." *Id.* at § 219.3(b). A forest plan in itself "does not give anyone a legal right to cut trees, nor does it abolish anyone's legal authority to object to trees being cut." *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998).

Rights enter the picture when the Forest Service moves to site-specific projects. In this step, the Forest Service implements the plan in a specific location by selecting a timber sale area, preparing an environmental assessment in accordance with NEPA, allowing public comment, and awarding a timber harvesting contract to the highest bidder. *See id.* at 729-30; *Sierra Club v. Peterson*, 228 F.3d 559, 562 (5th Cir. 2000); 36 C.F.R. § 223.1. Each site-specific project and timber sale contract must be consistent with the applicable forest plan. 36 C.F.R. § 219.8(e), § 223.30.

The Forest Service introduces its bias at the stage of making the forest plan, while case law prohibits bias only at the

| Sierra Forest Legacy v. Rey | 5783 |
|---|---|

stage of awarding contracts. This delay in the bite of the bias should not insulate it from judicial review. The financial incentive of the Forest Service in implementing the forest plan is as operative, as tangible, and as troublesome as it would be if instead of an impartial agency decision the agency was the paid accomplice of the loggers.

That the difference between judicial and legislative functions makes a difference as to the impropriety of monetary benefit to the decision-makers is a fallacy. The bribery of a congressman is a crime. *See* 18 U.S.C. § 201; *United States v. Brewster*, 408 U.S. 501 (1972). It would not make a difference if the bribe came from a trade association on behalf of a whole industry. *See, e.g.*, *United States v. Sun-Diamond Growers of California*, 526 U.S. 398 (1999). In the instant case the decision-makers are influenced by the monetary reward to their agency, a reward to be paid by a successful bidder as part of the agency's plan.

Independently of the grounds set out in my opinion for the court, I would hold this defect in the process to vitiate entirely the ultimate decisions, without the necessity of balancing, and to require judicial setting aside of the implementation of the process.