UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**RECENT PAST PRESERVATION** )
**NETWORK, et. al.,** )
           )
        Plaintiffs, )
           ) **Case No. 06-cv-2077 (TFH-AK)**
     vs. )
           )
**JOHN LATSCHAR, et. al.,** )
           )
       Defendants. )

**MEMORANDUM OPINION**

Before the Court are the First and Second Report and Recommendation ("Report I" or "First Report" and "Report II" or "Second Report") of Magistrate Judge Alan Kay [Doc. Nos. 45 & 46] regarding Plaintiffs' Motion to Augment the Record [29]; Plaintiffs' Motion for Judicial Notice [39]; and the Parties' Cross-Motions for Summary Judgment [28 & 30], along with the objections and responses thereto. Upon consideration of the pending motions, the Reports and Recommendations, the parties' briefs, and the entire record herein, the Court (1) rejects in part and adopts in part with modification the First Report and Recommendation, and (2) rejects in part and adopts in part the Second Report and Recommendation. For the reasons explained herein, the Court will deny Plaintiffs' Motion to Augment the Record, grant Plaintiffs' Motion for Judicial Notice, grant in part and deny in part Plaintiffs' Motion for Summary Judgment, and grant in part and deny in part Defendants' Cross-Motion for Summary Judgment.

**I.   BACKGROUND**

The Recent Past Preservation Network ("RPPN"), Dion Neutra, and Christine Madrid French filed this lawsuit against the National Park Service and the named public officials in December

2006, seeking declaratory and injunctive relief "to ensure that the Park Service does not demolish the historic Gettysburg Cyclorama Center . . . ." Compl. at 2. The Gettysburg Cyclorama Center ("Cyclorama Center" or "the Center") was commissioned by the Park Service and designed by architect Richard Neutra to serve as a visitor center and to display a 356-foot long cylindrical painting by Paul Philippoteaux depicting "Pickett's Charge," a pivotal attack during the Battle of Gettysburg. Report II at 2-3. The Center remains on Ziegler's Grove in Gettysburg National Park, but it no longer serves either of these functions.[1] A.R. 1592-95. In June 1999, the Park Service published a Final General Management Plan/Environmental Impact Statement (GMP/EIS) that included (as Alternative C) plans to remove the Center as part of an effort to rehabilitate the site to reflect conditions in 1863. Report II at 3-6. On November 23, 1999, the Park Service issued a Record of Decision ("ROD") announcing its decision to implement Alternative C of the GMP/EIS. A.R. 20. Based in part on the Center's eligibility for listing in the National Register of Historic Places, Plaintiffs contend that the Park Service has failed to comply with the requirements of the National Environmental Policy Act of 1969 ("NEPA"), 42 U.S.C. §§ 4231-4370f, and the National Historic Preservation Act ("NHPA"), 16 U.S.C. §§ 470 *et. seq.* [2]

In January 2008, Plaintiffs filed a Motion for Summary Judgment and a Motion to Augment the Record. On March 14, 2008, Defendants filed a Cross-Motion for Summary Judgment. On July 25, 2008, Plaintiffs filed a Motion for Judicial Notice of a supplemental authority. The undersigned referred these four motions to Magistrate Judge Alan Kay for proposed findings of fact

---

[1] The Center opened in 1962 but ceased to function as the visitor center and museum in 1971. Defs.' Objs. to Report II at 5. The painting now resides in the Gettysburg National Military Park Museum and Visitor Center on Baltimore Pike.

[2] The relevant facts of this case are set forth in greater detail in Magistrate Judge Kay's Reports. The parties do not object to Judge Kay's description of the factual background of the case or the applicable standards of review. The Court accordingly adopts Section I (Background) of the First Report and Sections I (Background) and II (Standard of Review) of the Second Report.

and recommendations on their dispositions pursuant to Local Civil Rule 72.3. Referral Order (Sept. 22, 2008) [41]. On March 23, 2009, Magistrate Judge Kay issued two Reports. The First Report recommends that the Court grant Plaintiffs' Motion to Augment the Record and Plaintiffs' Motion for Judicial Notice. Report I at 5. The Second Report recommends that the Court grant summary judgment in favor of Plaintiffs on their NEPA claims and grant summary judgment in favor of Defendants on the NHPA claims. Report II at 35. Defendants filed timely objections to each Report. Plaintiffs filed a timely response, but raised no objections. They instead encourage the Court to adopt both Reports in full. The Court here considers *de novo* the portions of the Reports to which objections have been made.[3]

## II. ANALYSIS

### A. First Report and Recommendation

#### 1. Plaintiffs' Motion to Augment the Record

At the time they submitted the administrative record to the Court, Defendants noted a dispute over whether certain documents should be included in the record. Defs.' Notice of Filing [20]. Three months later, Defendants supplemented and certified the record. Defs.' Notice of A.R. Supp. [26 & 27]; Report II at 28 n.20. Plaintiffs thereafter filed a Motion to Augment the Record with five declarations and several documents that they request the Court consider as either

---

[3] When a party files written objections to any part of a magistrate judge's recommendation with respect to a dispositive motion, the court considers *de novo* those portions of the recommendation to which objections have been made, and "may accept, reject, or modify the recommended disposition." FED. R. CIV. P. 72(b)(3). The parties indicate that the First Report should be adopted except to the extent it is "clearly erroneous or contrary to law." *See* Defs.' Reply at 2 ("A Magistrate Judge's decision is entitled to great deference unless it is clearly erroneous or contrary to law . . . ."). Each party is clearly erroneous. Since the First Report concerns only non-dispositive matters, the parties would be right *if* the motion were "referred to magistrate judge to hear *and decide*." FED. R. CIV. P. 72(a) (emphasis added). Here the case was referred under LCvR 72.3 for "proposed findings of fact and recommendations." Therefore, *de novo* is the proper standard of review for both Reports.

part of the administrative record or as extra-record evidence. Pls.' Mot. to Augment [29].

Magistrate Judge Kay recommends that the Court accept these documents as extra-record evidence of "(1) the feasibility of potential alternatives to demolition that were not evaluated by the Park Service, and (2) Plaintiffs' post-ROD requests for information from the Park Service and relevant responses (or non-responses)." Report I at 4.

### a. Legal Standard

The Administrative Procedure Act ("APA") instructs a reviewing court to "review the whole record or those parts of it cited by a party." 5 U.S.C. § 706. The review "is to be based on the full administrative record that was before the agency decision makers at the time they made their decision." *Pacific Shores v. Army Corps of Engineers*, 448 F. Supp. 2d 1, 4 (D.D.C. 2006) (Facciola, M.J.) (brackets omitted) (quoting *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420 (1971)). "Once an agency presents a certified copy of the complete administrative record to the court, the court presumes that the record is properly designated. . . . For a court to supplement the record, the moving party must rebut the presumption of administrative regularity and show that the documents to be included were before the agency decisionmaker." *Id.* at 5-6 (citation omitted). Consideration of extra-record information is appropriate when the movant shows that simply reviewing the administrative record is not enough to resolve the case. *Esch v. Yeutter,* 876 F.2d 976, 991 (D.C. Cir. 1989). One example is where a court requires additional information to evaluate an agency's analysis of potential environmental impacts under NEPA. *Id.*; *see also Pacific Shores*, 448 F. Supp. 2d at 6.

### b. Discussion and Disposition

The Declarations of Jerry Matyiko, Robert Shoaff, and David McIlnay discuss the feasibility of alternatives to demolishing the Cyclorama Center. The Declaration of RPPN President Christine French discusses her correspondence with the Park Service regarding plans for the Center. The

Declaration of Matthew Adams attempts to lay the foundation for the fourteen documents that accompany it, including information requests submitted to the Park Service, dictionary definitions, and letters to Superintendent Latschar. Plaintiffs contend, in a conclusory manner, that some of these materials provide "information necessary for effective judicial review of Defendants' failure to take actions required under NEPA and the NHPA."[4] Pls.' Mot. to Augment at 4. Defendants argue that the motion should be denied "[b]ecause Plaintiffs have failed to carry their burden of showing that these documents are essential for effective judicial review and are consistent with one of the exceptions to the rule that [] agency action must be reviewed on the record." Defs.' Objs. to Report I [48] at 6 (internal quotation marks omitted).

Some of the declarations and accompanying exhibits might aid an assessment of the notice that the Park Service provided regarding plans for the Cyclorama Center. Others might be relevant to standing, which is not contested here. Should the Court reach the question, some of the submitted material might be relevant to an evaluation of the Park Service's assessment of environmental impacts. The Court is left to such speculation because Plaintiffs' motion does not reveal inadequacies in the Park Service's record or otherwise explain how the documents would aid judicial review. Indeed, the motion is unsupported by even a single citation to the administrative record. *See generally United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs"). Accordingly, the Court will respectfully reject

---

[4] This argument supports consideration of the materials *sub judice* as extra-record evidence. Plaintiffs do not provide an argument supporting consideration of these materials as part of the administrative record. Nor did they object to Magistrate Judge Kay's treatment of the documents as extra-record evidence rather than as part of the administrative record. Therefore, despite the Defendants' supplemental filing of their heavily-relied-upon 1995 and 1996 Draft Environmental Assessments concerning the Cyclorama Center, the Court finds that Plaintiffs have not rebutted the presumption of administrative regularity.

Section II of Magistrate Judge Kay's First Report and Recommendation and will deny Plaintiffs' Motion to Augment the Record.[5]

### 2. Motion for Judicial Notice

Plaintiffs also request that the Court take Judicial Notice of a Ninth Circuit opinion issued after motions were filed in this case. Defendants question the applicability of the opinion, but do not oppose the motion. Defs.' Resp. to Pls.' Mot. for Jud. Notice [40]. The Court routinely accepts supplemental authorities brought to its attention on a timely basis. Therefore, the First Report recommends granting the motion, citing Federal Rule of Evidence 201. Report I at 5.

Rule 201 provides an avenue for the Court to take judicial notice of reasonably indisputable adjudicative facts at any time. FED. R. EVID. 201. It is not clearly an appropriate mechanism for acknowledging a persuasive authority, however. The Court therefore adopts Section III of Magistrate Judge Kay's First Report and Recommendation with a minor modification by accepting Plaintiffs' notice of a supplemental authority, disregarding the citation to Rule 201.

### B. Second Report and Recommendation: Cross-Motions for Summary Judgment

### 1. NHPA Claims

Plaintiffs contend that the Park Service failed to properly consider the re-use and preservation of the Cyclorama Center as required by NHPA Section 110(a)(1) (Count IV). They also contend that the Park Service failed to prepare an adequate preservation program under NHPA § 110(a)(2) (Count V). Magistrate Judge Kay determined the § 110(a)(1) claim to be time barred

---

[5] Although the Court declines to admit these documents as exhibits, parties (and judges) may nonetheless refer to certain forms of publicly available agency guidance. As such, the Court sees no reason to strike the Second Report's references to Park Service documents (e.g., the Director's Orders or the "DO-12 Handbook") to the extent they are accompanied by citation to the agency's website rather than to Plaintiffs' proffered exhibits.

by 28 U.S.C. § 2401(a).[6] Report II at 13-15. Judge Kay also recommends granting summary judgment in favor of Defendants on the § 110(a)(2) claim based on evidence that an agency-wide preservation program exists and Plaintiffs' failure to demonstrate any deficiency in the program. Report II at 34-5. The Plaintiffs filed no objections. The Court accordingly adopts the Second Report with regard to Plaintiffs' NHPA Claims (Sections III.B and V), and will grant summary judgment in favor of Defendants on those claims.

    2.    NEPA Claims

        *a. Statutory Background*

NEPA requires federal agencies to prepare, and make publicly available, an environmental impact statement ("EIS") before taking any major action "significantly affecting the quality of the human environment." *Citizens Against Burlington, Inc. v. Busey*, 938 F.2d 190, 193 (D.C. Cir. 1991). An EIS should "provide full and fair discussion of significant environmental impacts and inform decisionmakers and the public of the reasonable alternatives which would avoid or minimize adverse impacts or enhance the quality of the human environment." 40 C.F.R. § 1502.1. The EIS requirement obligates agencies to "take a 'hard look' at the environmental consequences before taking a major action." *Baltimore Gas & Elec. Co. v. Natural Res. Def. Council*, 462 U.S. 87, 97 (1983) (citations omitted).

Council on Environmental Quality ("CEQ") regulations interpreting NEPA help agencies determine which actions require an EIS. *See* 40 CFR § 1500.3 (2003). They permit an agency to prepare a more limited document (an Environmental Assessment or "EA"), if the agency's proposed action is neither categorically excluded from the requirement to produce an EIS nor would clearly

---

[6] Defendants argue that Plaintiffs' claims are time barred because they were not brought within six years of the 1999 Report of Decision and GMP/EIS. *See* 28 U.S.C. § 2401(a) ("every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues").

require the production of an EIS. *DOT v. Public Citizen*, 541 U.S. 752, 757-58 (2004); *see* 40 C.F.R. §§ 1501.4(a)-(b). An EA is a "concise public document" that "[b]riefly provide[s] sufficient evidence and analysis for determining whether to prepare an [EIS]." 40 C.F.R. § 1508.9(a). If, pursuant to an EA, an agency determines that an EIS is not required, it must issue a "finding of no significant impact" ("FONSI"), which briefly presents the reasons why the proposed action will not have a significant impact on the human environment. *Public Citizen*, 541 U.S. at 758 (citing 40 C.F.R. §§ 1501.4(e), 1508.13). CEQ regulations also impose a largely commonsense approach to paperwork and public notice. *See, e.g.,* 40 C.F.R. §§ 1500.4 (reducing paperwork); 1502.8 (writing in plain language); 1502.22 (noting incomplete or unavailable information).

NEPA imposes procedural requirements, but it does not divest agency decision makers of their authority to make professional decisions by compelling a particular result. *See Stewart Park & Reserve Coal v. Slater*, 352 F.3d 545, 557 (2nd Cir. 2003). Indeed, "[i]f the adverse environmental effects of the proposed action are adequately identified and evaluated, the agency is not constrained by NEPA from deciding that other values outweigh the environmental costs." *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350 (1989). In reviewing an EIS, the Court considers whether "the agency has made an adequate compilation of relevant information, has analyzed it reasonably, has not ignored pertinent data, and has made disclosures to the public." *Slater*, 352 F.3d at 557 (internal quotation marks omitted).

    *b. Discussion*

Plaintiffs contend that the Park Service failed to produce an adequate implementation level or site-specific environmental assessment or statement for the demolition of the Cyclorama Center in violation of NEPA.[7] Specifically, they claim that, with regard to the Center, the Park Service

---

[7] Agencies must make "diligent efforts to involve the public in preparing and implementing their NEPA procedures." 40 C.F.R. § 1506.6. Under Department of Interior regulations, the

failed to prepare an EIS as required by 42 U.S.C. §4332(2)(C) (Count I), failed to prepare an EA pursuant to 40 C.F.R. §§ 1501.3 and 1504.4 (Count II), and failed to adequately analyze alternative methods of "restoring" Ziegler's Grove as required by 42 U.S.C. § 4332(2)(E) (Count III). Complaint at 24-28. They argue that these each of these omissions constitutes a failure to act under 5 U.S.C. § 706(1) and that the decision to destroy the Center without producing such assessments is an action that is arbitrary, capricious, or otherwise not in accordance with law under 5 U.S.C. § 706(2). Pls.' Mot. for Summ. J. at 22. Defendants claim that the Park Service's June 1999 Final General Management Plan/EIS ("GMP/EIS") satisfies NEPA's analytical requirements. Defendants also argue that the November 1999 Final Record of Decision ("ROD") constitutes notice of final agency action with regard to the Cyclorama Center. Report II at 11-12. Plaintiffs dispute this, arguing that the Park Service contemplated, but never issued, a site-specific EIS. *Id*.

Magistrate Judge Kay determined that the neither the 1999 GMP/EIS nor the ROD satisfied NEPA requirements with regard to the Center, noting that the 1999 GMP/EIS left the door open for "more detailed assessments of impacts . . . as part of necessary implementation planning."[8] Report II at 13. Thus, the limitations clock did not begin ticking until some undetermined time after 1999. *Id.* Judge Kay recommends that the Court grant summary judgment in favor of Plaintiffs on their

---

Park Service must, "to the extent practicable, provide for public notification and public involvement when an environmental assessment is being prepared. However, the methods for providing public notification and opportunities for public involvement are at the discretion of the Responsible Official." 43 C.F.R. § 46.305.

[8] The Second Report cites internal Park Service guidance regarding site-specific analyses, including Director's Orders and the "DO-12 Handbook." Report II at 29-30. To the extent the Report relies on these documents, Defendants object to its conclusion that the Park Service contemplated a future site-specific EIS on demolition of the Cyclorama Center on the grounds that the materials are not judicially enforceable. Defs.' Objs. to Report II at 19. Defendants' argument is inapposite. Even without regard for these documents, Defendants have failed to show that the Park Service provided notice sufficient to trigger the limitations clock or to satisfy NEPA. Indeed, Judge Kay's analysis on this point is based primarily on the Park Service's description of the 1999 GMP/EIS as a "programmatic statement."

NEPA claims because "the Park Service did not properly evaluate the site-specific environmental impacts of demolition of the Cyclorama Center and did not properly consider alternatives to demolition." Report II at 33.

### i. Statute of Limitations

Defendants contend that Magistrate Judge Kay incorrectly determined that the 1999 ROD did not amount to notice of final agency action with regard to the Cyclorama Center.[9] They accurately explain that NEPA requires agencies to evaluate environmental consequences before committing to any actions that might affect the quality of the human environment. Defs.' Objs. to Report II at 15 (citing *Sierra Club v. Peterson*, 717 F.2d 1409, 1414 (D.C. Cir. 1983)). Defendants then argue, without any supporting citation, that "an irreversible and irretrievable commitment of resources was made, with the concomitant obligation to comply with NEPA." *Id.* at 17. There is no support in the record for this notion.[10] Moreover, Defendants' argument conflates ripeness with final action for purposes of determining the limitations period. Even if a claim became ripe in 1999, Defendants bear the burden of demonstrating that Plaintiffs had sufficient notice to set the limitations clock running. *See, e.g.*, *Sprint Communs. Co., L.P. v. FCC*, 76 F.3d 1221, 1226 (D.C. Cir. 1996) (noting that a court may deem a cause of action not to have accrued during a period of concealment); *see also P&V Enters. v. United States Army Corps of Eng'rs*, 466 F. Supp. 2d 134, 149 (D.D.C. 2006) (a "rebuttable presumption of equitable tolling applies to lawsuits governed by the six-year limitations period of § 2401(a)" (internal quotation

---

[9] Defendants did not raise a latches defense. *See generally Comm. to Save the Fox Bldg. v. Birmingham Branch of the Fed. Reserve Bank of Atlanta*, 497 F. Supp. 504 (N.D.Al. 1980) (denying last-minute NEPA and NHPA claims on grounds of latches); *Apache Survival Coalition v. United States*, 21 F.3d 895, 906 (9th Cir. 1994) (same).

[10] Indeed, Defendants' counsel indicated that the Park Service had not solicited bids for demolition of the Center as of November 2008. Defs.' Objs. to Report II Ex. 2 (Nov. 3, 2008 Letter to the Hon. Alan Kay).

marks and citation omitted)). Defendants dispute this, citing *Alder Terrace, Inc. v. United States*, for the proposition that the "burden of establishing jurisdiction, including jurisdictional timeliness, must be carried by the plaintiffs." 161 F.3d 1372, 1377 (Fed. Cir. 1998) (internal quotation marks omitted). *Alder Terrace* involved a different statute of limitations, and it is of questionable validity on this point, particularly in this Circuit, where 28 U.S.C. § 2401(a) has been treated as non-jurisdictional. *See Smith v. United States,* 518 F. Supp. 2d 139, 147 (D.D.C. 2007); *see also Grass Valley Terrace v. United States*, 69 Fed. Cl. 341, 347 (Fed. Cl. 2005) (summarizing inconsistent opinions and concluding that, with regard to 28 U.S.C. § 2501, "the statute of limitations issue goes to the sufficiency of the claim asserted and, thus, does not affect the court's subject matter jurisdiction").

Defendants also contend that "the administrative record reflects a complete awareness by Plaintiffs and others that the Park Service intended the ROD to be the final agency action with regard to demolition of the Cyclorama Building." Defs.' Objs. to Report II at 19. Defendants point to evidence indicating that, months prior to the publication of the Final GMP/EIS, Plaintiff Dion Neutra was informed that the preferred alternative would require demolition. *Id.* at 22. Yet Defendants provide no authority suggesting that such awareness on the part of the individual plaintiffs would preclude the APA claims raised here. Rather than providing public notice of a final decision with regard to the Center, the ROD and GMP/EIS indicated a likelihood of a future, site-specific statement. The Court accordingly adopts Section III.A of the Second Report.

      ii. Site-Specific Analysis

Defendants further suggest that the Second Report wrongly disregards the project-specific analyses referenced in the 1999 GMP/EIS. Defs.' Objs. to Report II at 17, 26. Specifically, they point to the 1995 and 1996 Draft Development Concept Plans/Environmental Assessments and the 1999 MOA between the Park Service, the Pennsylvania Historic Preservation Office, and the

Advisory Council on Historic Preservation. *Id*. at 28-36. The MOA does indicate that the decision to demolish was reached in August 1999, a few months before the ROD was issued. A.R. 51-55. But as Judge Kay explained, neither the Draft EAs[11] nor the MOA was properly incorporated by reference into the Final EIS or ROD.[12] Report II at 28-29; *see* 40 C.F.R. § 1502.21 (requiring incorporated material to be cited in the statement and its content briefly described); A.R. 45 (containing a general citation to the MOA). The Court cannot countenance disregard for NEPA's public notice requirements by considering unincorporated documents in its evaluation of the Park Service's actions here.

iii. Alternatives to Demolition

Defendants also attack the Second Report's conclusion that the Park Service failed to properly consider alternatives to demolition of the Cyclorama Center. Defs.' Objs. to Report II at 37. Magistrate Judge Kay's analysis properly focuses on the 1999 GMP/EIS, which provides a park-wide overview,[13] but does not provide the reader with an analysis of the Center's demolition and removal, either by way of discussion or adequate reference to another source. Consequently, Defendants' argument that any claim regarding alternatives to demolition not raised in comments before the agency was waived, *id.* at 37-38, is unavailing. *See* Report II at 32-33. With regard to

---

[11] Moreover, both the 1995 and 1996 Draft DCP/EAs were abandoned. A.R. 2270 (1995 Notice of Termination), A.R. 646, 2311-12 (announcing Termination of 1996 DCP/EA). Additionally, the 1996 DCP/EA did not invite comments, and the record does not reflect any response to the comments that the Park Service nevertheless received.

[12] The Final ROD does include, in an Appendix, a report that notes the "fatal" effect the Park Service's proposed action would have on the Center. A.R. 559. Overall, however, the ROD discusses the effects of demolition and new construction only in general, park-wide terms (e.g., a loss of two acres of wetlands), and it is unclear about the fates of different facilities. *See, e.g.*, ROD at 13 (A.R. 45) ("Construction activities related to a *relocation* of the park's museum complex, visitor facilities and administrative facilities to a site removed from its prime resources have the potential to cause environmental harm." (emphasis added)).

[13] *See, e.g.*, Final GMP/EIS at 169-70 (A.R. 315-16) (noting that the park contains 148 historic buildings and that the "sheer number of buildings and structures places strain on the park's financial and staff resources").

consideration of alternatives, the Court is careful not to treat the absence of evidence as evidence of absence. It may be that the Park Service conducted sufficient analyses yet failed to provide adequate notice,[14] but that would not change the result here.

### iv. Scope of Remedies

Finally, Defendants object to the relief recommended by Judge Kay. They claim that an order requiring an EIS would "usurp" the agency's authority to decide whether a site-specific EIS is appropriate: "While a proposal contemplating the demolition of historic property certainly triggers NEPA obligations to undertake a review, as such a proposal is a 'major federal action,' it does [*sic*], on its own necessarily dictate the level of appropriate review." Defs.' Objs. to Report II at 43. Defendants point to Section IV of the Second Report, which states, in pertinent part: "Because the Cyclorama Center was declared eligible for listing in the National Register of Historic Places . . . in 1998, any demolition of the building would itself be a significant impact, and therefore a major federal action affecting the environment and requiring an EIS under NEPA." Report II at 20. This passage is incorrect. *See* 36 C.F.R. 800.8 ("A finding of adverse effect on a historic property does not necessarily require an EIS under NEPA"). Accordingly, the Court will modify Section IV of the Report to ensure it is consistent with Judge Kay's concluding recommendation "that Defendants be ordered to undertake a full implementation-level and site-specific *environmental analysis* on the demolition of the Cyclorama Center and non-demolition alternatives before any implementing action is taken on the Center."[15] Report II at 34 (emphasis added).

---

[14] Scattered throughout the record are facts that support the Park Service's decision. The Section 106 Report describes the disrepair of the Center, A.R. 1594, the original plan to demolish the Center after seven years, A.R. 1597, mitigation measures, A.R. 1605, and reasons for declining to rehabilitate the building, A.R. 1606 ("Because the building is poured-in-place concrete, it cannot be jacked up"). *See also* Advisory Council Finding at 11 (A.R. 561) (The siting of the Center, "by today's standards, would be rejected out of hand.").

[15] Since Defendants concede this is a major federal action, Defs.' Objs. at 43, they must determine whether it will "significantly affect[] the quality of the human environment."

- 13 -

### c. *Disposition of NEPA Claims*

With regard to Section IV of the Second Report, the Court agrees that, with regard to the restoration of Ziegler's Grove and the demolition of the Cyclorama Center, the Park Service failed to produce an EIS sufficient to meet its obligations under NEPA. *See* Report II at 21. The Court does not agree that the Center's eligibility for listing in the National Register of Historic Places compels the conclusion that a site-specific EIS is required. Therefore, the Court will reject (1) the final sentence on page 20, and (2) both paragraphs beginning on page 21. The Court adopts the remainder of Section IV.A. The upshot is that the Park Service must determine whether the proposed demolition and restoration constitutes a significant impact for purposes of 42 U.S.C. § 4332 and proceed accordingly. Whether that means a categorical determination or an environmental assessment followed by a FONSI or an EIS (or Supplemental EIS) is for the Park Service to determine.[16]

Consistent with the other findings adopted here, the Court finds that the Park Service produced neither an adequate EIS, *see* 42 U.S.C. § 4332(C), nor any other assessment or determination consistent with 40 C.F.R. § 1501.4 covering the site of the Cyclorama Center. The Court agrees that by failing to take such action in satisfaction of NEPA before reaching a final decision to demolish the Center, the Park Service withheld or unreasonably delayed agency action under 5 U.S.C. § 706(1). The Court also agrees that the Park Service's final decision to destroy the

---

42 U.S.C. § 4332(C). CEQ regulations provide options on how to make this determination, with the result being either (a) a categorical determination, or (b) an environmental assessment. 40 C.F.R. § 1501.4. After an environmental assessment, the Park Service may prepare and issue either an EIS or a FONSI. *Id.*; *see also id.* § 1508.9.

[16] Naturally, in making these decisions, Park Service officials should follow applicable CEQ regulations and agency procedures. *See, e.g.*, 40 C.F.R. §§ 1507.3, 1508.27 (defining "significantly"), 1502.20 (tiering). If categorical treatment is not suitable, an environmental assessment covering the site would be appropriate. *See City of Dania Beach v. FAA*, 485 F.3d 1181, 1189 (D.C. Cir. 2007).

Center and rehabilitate Ziegler Grove without first satisfying NEPA constitutes an unlawful agency action under 5 U.S.C. § 706(2). Accordingly, the Court will grant summary judgment in favor of Plaintiffs on Counts I and II. The Court need not rule on the merits of Count III, as the Court's resolution of Counts I and II renders it moot, and the inadequate discussion of alternatives in the GMP/EIS has already been noted here. *See generally* Report II at 31.

## III. CONCLUSION

For the foregoing reasons, the Court adopts in part, modifies in part, and rejects in part Magistrate Judge Kay's First Report and Recommendation, and adopts in part and rejects in part his Second Report and Recommendation. Specifically, the Court adopts Section I of the First Report, rejects Section II, and adopts Section III with modification. With respect to the Second Report, the Court adopts the proposed findings in Sections I, II, III, and V with the caveat that references to extra-record material proffered by Plaintiffs are disregarded. *See, e.g.*, Report II at 13 (citing Adams Decl.). As discussed in the preceding section, the Court adopts in part and rejects in part the proposed findings in Section IV. Accordingly, the Court will deny Plaintiffs' Motion to Augment the Record, grant Plaintiffs' Motion for Judicial Notice, grant in part and deny in part Plaintiffs' Motion for Summary Judgment, and grant in part and deny in part Defendants' Cross-Motion for Summary Judgment.

An Order accompanies this Memorandum Opinion.

March 31, 2010

/s/
THOMAS F. HOGAN
UNITED STATES DISTRICT JUDGE